# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

MELINDA NOTT, :

                  Plaintiff,

     -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                 Defendant. :

Case No. 3:11-cv-338

District Judge Timothy S. Black
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to

prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently

2

engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on October 31, 2007, alleging disability from April 18, 2005, due to degenerative disc disease, back injury, arthritis, neck injury, and shoulder injury. PageID 194-95; 209. The Commissioner denied Plaintiff's application initially and on reconsideration. PageID 154-57; 159-61. Administrative Law Judge Carol Bowen held a hearing, PageID 114-49, and subsequently determined Plaintiff is not disabled. PageID 90-101. The Appeals Council denied Plaintiff's request for review, PageID 80-83, and Judge Bowen's decision became the Commissioner's final decision. See *Kyle v. Commissioner of Social Security,* 609 F.3d 847, 854 (6th Cir. 2010).

In determining that Plaintiff is not disabled, Judge Bowen found that Plaintiff has severe lumbar and cervical degenerative disc disease with radiculopathy, degenerative joint disease of the right shoulder, headaches, and depression, but that she does not have an impairment or combination of impairments that meets or equals the Listings. PageID 93, ¶ 3; PageID 95, ¶ 4.

Judge Bowen also found that Plaintiff has the residual functional capacity to perform a limited range of light work. PageID 96, ¶5. The Judge then used section 202.18 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. PageID 100, ¶ 10. Judge Bowen concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. PageID 101.

Plaintiff sustained a right shoulder and lumbar and thoracic spine work-related injury in January 2005 and subsequently sought treatment with a chiropractor. PageID 288-89.

An April 7, 2005, MRI of Plaintiff cervical spine revealed a moderate left posterolateral disc herniation causing effacement of the ventral lateral aspect of the thecal sac on the left at the C5-6 level. PageID 285-86. On that same date, an MRI of Plaintiff's right shoulder revealed some edema of the marrow of the distal clavicle potentially indicating bone contusion. *Id.* A May 6, 2005, MRI of Plaintiff's lumbar spine suggested early degenerative disease, some lumbar facet atrophy, and findings which were consistent with a small micro tear of the L4-5 disc annulus. PageID 287.

Plaintiff consulted with pain management specialist Dr. Saleh in April 2005 for neck pain radiating into her right arm and she received treatment including epidural steroid injections from Dr. Saleh until June 2008. PageID 497-523. Plaintiff continued to receive treatment from Dr. Saleh for her various complaints of pain through February 2010. See, *e.g.,* PageID 577-94.

In January 2006 Plaintiff underwent right should arthroscopy with a rotator cuff repair, decompression, and lateral clavicle resection which Dr. Urse performed. PageID 290-93. On April 17, 2006, Dr. Urse reported that Plaintiff was "doing great", had very little pain, was quite pleased with her improvement, and that she would continue strengthening exercises. PageID 300.

Examining physician Dr. Franklin reported on June 12, 2006, that Plaintiff sustained a work-related injury on January 16, 2005, she complained of constant right neck and shoulder pain, intermittent back pain, was five feet and five inches tall, weighed one hundred seventy-two pounds, ambulated in an excellent fashion on heels and toes, and did not have an antalgic gait. PageID 307-10. Dr. Franklin also reported that Plaintiff had right lateral cervical musculature tenderness, decreased ranges of spinal motion, generalized tenderness of her right shoulder with decreased ranges of motion, positive impingement tests, and a normal neurological examination. *Id.* Dr. Franklin noted that Plaintiff had asymptomatic straight leg raisings. *Id.* Dr. Franklin opined that Plaintiff had reached maximum medical improvement, would be able to return to her former position of gas station manager in a restricted capacity, her functional limitations would be light work and primarily left-handed work with minimal overhead work with the right upper extremity, and that she should not lift over five pounds with the right upper extremity alone. *Id.* Dr. Franklin also opined that Plaintiff was limited to total lifting of not more than twenty to twenty-five pounds and frequent lifting not to exceed ten to fifteen pounds, and that as long as Plaintiff had persistent, significant pain in the shoulder and neck area, her expected length of treatment could not be absolutely determined and would likely continue for many years. *Id.*

An April 2007 MRI of Plaintiff's cervical spine revealed a small disc extrusion at C6-7 on the right side and a moderate disc protrusion at C5-6 on the left side and Plaintiff subsequently received an epidural cervical injection which Dr. Saleh performed. PageID 415-16.

A November 11, 2008, MRI of Plaintiff's lumbar spine revealed a moderately large posterior left central disc herniation at L5-S1 moderately compression and deforming the left anterolateral aspect of the thecal sac with posterior displacement of the left S1 nerve root, a posterior central extrusion type of disc herniation at L4-5 measuring 3 mm. in diameter with

caudal subligamentous migration of nuclea material, mild bilateral neural canal stenosis at L4-5 due to disc bulging, early mild spondylosis at L1-2 and L2-3 with mild disc degeneration at L4-5 and mild spondylosis at L5-S1, and annular bulging posteriorly at L1-2. PageID 545-46.

On January 2, 2009, Plaintiff consulted with neurosurgeon Dr. Minella who reported that Plaintiff complained of back pain with radiation to the left leg greater than the right for at least the last year and one-half. PageID 552. Dr. Minella also reported that Plaintiff's straight leg raising was positive on the left, she had normal muscle strength, diffusely decreased pinprick in the left leg except that it was symmetric at S1 bilaterally, and that her reflexes showed very subtle reduction in ankle jerk in the left. *Id.* Dr. Minella noted that Plaintiff's MRI showed herniated disc at L5-S1 of a significant degree and that he doubted Plaintiff's condition would improve without surgery. *Id.*

Dr. Saleh reported on April 22, 2009, that Plaintiff was able to occasionally lift up to five pounds and less than five pounds frequently, stand/walk and sit each for less than one-half hour in an eight-hour day, and that she was not able to climb, stoop, crouch, kneel, or crawl. PageID 573-76. Dr. Saleh also reported that Plaintiff was not able to perform sedentary, light, or medium work, and was unable to work. *Id.* Dr. Saleh reported further that he based his opinion on Plaintiff's complaints of chronic pain and the positive MRI. *Id.*

On August 8, 2009, Plaintiff underwent an EMG which revealed electrodiagnostic evidence of bilateral L4-5 radiculopathy as well as bilateral L5-S1 radiculopathy worse on the left. PageID 608.

A March 26, 2010, EMG revealed electrodiagnostic evidence of right C5 radiculopathy. PageID 611.

In April, 2010, a nurse practitioner in Dr. Saleh's office gave Plaintiff a prescription for a

standard cane because she had an unsteady gait. PageID 597.

A medical advisor (MA) testified at the hearing that Plaintiff did not meet or equal the Listings, that he disagreed with Dr. Saleh's opinion as to Plaintiff's residual functional capacity, and that there was no reason for Plaintiff to need to use a cane when ambulating. PageID 118; 136.

Plaintiff alleges in her Statement of Errors that the Commissioner erred by failing to give controlling weight to Dr. Saleh's opinion and by failing to properly evaluate her credibility. (Doc. 14). The Court will first address Plaintiff's second Error.

This is essentially a "pain case". In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247, (6th Cir. 2007). Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. *Rogers, supra* (citations omitted). First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* (citation omitted). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities, *Id.* Stated differently, there is a two-step process for evaluating pain. First, the individual must establish a medically determinable impairment which could reasonably be expected to produce the pain. *See, Jones v. Secretary of Health and Human Services,* 945 F.2d 1365 (6th Cir. 1991), *citing, Duncan v. Secretary of Health and Human Services,* 801 F.2d 847 (6th Cir. 1986). Second, the intensity and persistence of the alleged pain are evaluated by considering all of the relevant evidence. *See, Jones,* 945 F.2d at 1366-70.

The measure of an individual's pain cannot be easily reduced to a matter of neat calculations. *Jones, supra*. There are no x-rays that can be taken that would objectively show the precise level of agony that an individual is experiencing. *Id.* Hence, in evaluating the intensity and persistence of pain, both physicians and laymen alike, must often engage in guesswork. *Id.* The Commissioner's own guidelines acknowledge the most inexact nature of this evaluation:

> Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw reasonable conclusions about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity. Whenever available this type of objective medical evidence must be obtained and must be considered in reaching a conclusion as to whether the individual is under a disability.

*Jones,* 945 F.2d at 1369-70 (citation omitted).

The Commissioner may not disregard a claimant's subjective complaints of pain solely because they are not supported by the objective medical evidence. *See,* 20 C.F.R. §404.1529(c)(2). Other factors which the Commissioner must consider include the location, duration, frequency, and intensity of the pain, what precipitates or aggravates the pain, the treatments or other methods the claimant uses to alleviate the pain, the type, dosage, effectiveness, and side effects of any medication the claimant takes to relieve the pain; and how the pain affects the claimant's daily life. *See,* 20 C.F.R. §404.1529(c)(2)-(3); *see also, Jones,* 945 F.2d at 1369-70 (citation omitted).

The Commissioner rejected Plaintiff's allegations of pain primarily on the bases that treating physician Dr. Saleh reported on several occasions that Plaintiff's medications, as well as her use of a TENS unit, were effective in controlling Plaintiff's pain and increasing her functional capabilities and quality of life. PageID 99. However, Dr. Saleh's notes are not inconsistent with

Plaintiff's allegations of disabling pain.

First, the Court notes that in applying the *Jones/Duncan* test, Plaintiff has established the presence a medically determinable impairment which could reasonably be expected to produce the pain. Indeed, the Commissioner found that Plaintiff has severe lumbar and cervical degenerative disc disease with radiculopathy and degenerative joint disease of the right shoulder. The question becomes, then, whether the evidence supports Plaintiff's allegations of disabling pain.

First, over time, Dr. Saleh documented positive clinical findings including tenderness, muscle spasms, decreased sensation, nonsymmetrical reflexes, and decreased ranges of motion. While Dr. Saleh did note that medications and a TENS unit were effective in controlling Plaintiff's pain and increasing her functional capabilities and quality of life, he also noted that Plaintiff's pain was constant and was associated with numbness, tingling, and muscle weakness.

Plaintiff's complaints of disabling pain are also supported by the objective test results. For example, the April 2005 MRI of Plaintiff's cervical spine revealed a herniated disc causing effacement. An April 2007 MRI of Plaintiff's cervical spine revealed disc extrusions at C6-7 and C5-6. In November 2008 an MRI of Plaintiff's lumbar spine revealed a large disc herniation at L5-S1 with compression and displacement of the left S1 nerve root and a disc herniation at L4-5. In August, 2009, an EMG was positive for bilateral L4-5 radiculopathy and L5-S1 radiculopathy and a March, 2010, EMG revealed C5 radiculopathy.

Finally, consistent with Dr. Saleh's reports, Dr. Manella reported that Plaintiff had positive neurological findings including straight leg raising, decreased pinprick, and decreased reflexes.

Because Plaintiff's allegations of disabling pain are supported by the record, the Court finds that the Commissioner erred by finding that Plaintiff was not entirely credible. Accordingly, the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence

on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

This Court finds that all of the factual issues have been resolved and that the record establishes Plaintiff's entitlement to benefits. Specifically, as the Court noted above, Plaintiff's allegations of disabling pain are supported by the documented clinical findings including positive neurological findings as well as by the MRI results in the record. Therefore, the Commissioner's decision that Plaintiff is not disabled by pain should be reversed.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled be reversed. It is also recommended that this matter be remanded to the Commissioner for the payment of benefits consistent with the Act.

August 27, 2012                                             **s/Michael R. Merz**
                                                            United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).